**FILED**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

TIME:_____

NOV 1 6 2005

JAMES BONINI, Clerk
COLUMBUS, OHIO

UNITED STATES OF AMERICA,

      Plaintiff,

                              Case No. 2:05-CR-199
                              JUDGE GREGORY L. FROST

  v.

ROBERT WESTMORELAND,

      Defendant.

### ORDER

    This matter came on for an evidentiary hearing this 9th day of November, 2005 upon the Motion to Suppress (Doc. # 13) filed by the Defendant on October 20, 2005 and upon the Response (Doc. # 15) filed by the Government on October 28, 2005.

**FACTS**

    At the hearing, four witnesses testified on behalf of the Government and two witnesses testified for the Defendant.  Based upon the testimony, the evidence admitted, and the stipulation of the parties the Court finds the facts to be as follows:

    On the night of January 27, 2005 and continuing into the early hours of January 28, 2005 patrol officer Smith Weir of the Columbus Police Department was on special assignment investigating drug activity at a residence located at 2437 Taylor Avenue, Columbus, Franklin County, Ohio.  Office Weir was observing various vehicles as they arrived and left the residence. On at least one previous occasion that evening a vehicle leaving the residence had been stopped

1

by the authorities.   A white Ford Bronco arrived at the house and then left shortly thereafter. Officer Weir alerted all police units in the area to watch for the vehicle and to stop it if a violation of traffic laws was observed.  Officer Bass was heard via radio to have observed the vehicle but he saw no traffic violations.  He advised other officers in the area of the direction of travel.

Officer John Davis and Mark Fester were on patrol in the South Linden area and heard the initial request from Officer Weir.  They observed the white Ford Bronco and began to follow it at the intersection of Parkwood and Hudson.  They did not observe any traffic violations until the vehicle reached the area of Parkwood Avenue and Mock Road.  Officers Davis and Fester both testified that they observed the white Ford Bronco as it proceeded southbound on Parkwood Avenue and then turn left onto Mock Road proceeding eastbound.  Neither officer observed the vehicle indicate the left turn with a turn signal.  The officers activated their overhead lights and stopped the vehicle.  Stephen D. Bryant was the operator of the Ford Bronco and the Defendant was a passenger.  It is the evidence obtained during this traffic stop that the Defendant argues should be suppressed.

It is necessary to describe the area where the alleged traffic violation occurred in order to fully understand the position of the parties.  Parkwood Avenue proceeds in a north-south direction.  Mock Road proceeds in an east-west direction and terminates westbound when it intersects at Parkwood Avenue.  However, it is not a typical "T-intersection."  When proceeding southbound on Parkwood Avenue, a driver can travel southbound past the intersection with Mock Road and remain on Parkwood Avenue unimpeded by any traffic control device.  If a

2

driver is proceeding northbound on Parkwood Avenue at the intersection with Mock Road the

driver must, as a result of a stop sign controlling that direction of travel, stop and yield to

vehicles traveling southbound on Parkwood Avenue as well as to vehicles proceeding westbound

on Mock Road. When proceeding westbound on Mock Road, a vehicle may turn southbound or

northbound on to Parkwood Avenue without stopping because no traffic control device controls

that direction of travel. A double yellow line is painted in the middle of Parkwood Avenue as it

proceeds southbound. At the Parkwood - Mock intersection the double yellow line becomes a

dotted double yellow line providing guidance for vehicles turning from Parkwood Avenue

southbound to eastbound on Mock Road as well as for vehicles turning northbound onto

Parkwood Avenue when proceeding westbound on Mock Road. If a driver is proceeding

southbound on Parkwood Avenue and continues on that roadway straight past Mock Road,

Parkwood Avenue has no outlet and becomes a dead end road further beyond the Mock Road

intersection.

Andy Beard, City of Columbus, Transportation Division, Development Services

Engineer, testified that the intersection is not a normal "T-intersection" where the vehicles

operating on the stem of the "T" would be required to stop and yield. There is no outlet on

Parkwood Avenue south of the Mock Road intersection and therefore a stop sign was placed on

Parkwood Avenue regulating the northbound traffic on Parkwood at that intersection rather than

a stop sign on Mock Road controlling the westbound flow of traffic on Mock Road as it ended at

Parkwood Avenue. In order to assist the traffic flow, the radius of the turn from Parkwood

southbound onto Mock eastbound and from Mock westbound onto Parkwood northbound was

3

increased rather than the normal "squared" intersection.



The above drawn illustration best describes the intersection. The vast majority of the vehicles southbound on Parkwood Avenue turns left onto Mock because of the fact that Parkwood Avenue south of Mock Road has no outlet although there are some businesses and residences on Parkwood Avenue south of Mock Road. An informal survey of the operators of vehicles driving southbound on Parkwood Avenue and turning eastbound onto Mock Road revealed that only twelve of a total of one hundred forty (about 8.5%) activated a turn signal. Bill Lewis, a Columbus City Traffic Engineer, and Andy Beard, the aforementioned Development Services Engineer, disagreed regarding this issue. Mr. Lewis testified that it is

4

necessary to activate a turn signal when proceeding left from Parkwood onto Mock and Mr. Beard maintained that it is not lawfully required.

### STANDARD

The Defendant argues that the driver of the automobile in which he was a passenger was not required to signal his intention to turn left onto Mock Road eastbound from Parkwood Avenue southbound because Parkwood Avenue "flows <u>directly</u> into Mock Road, in a continuous roadway, uncontrolled by <u>any</u> traffic control devices." Since the operator of the vehicle was not required to signal the left turn onto Mock Road, so the argument of the Defendant goes, the officers had no probable cause to stop the vehicle for a traffic violation and the recovery of evidence thereafter was constitutionally impermissible. The Government predictably disagrees.

It is conceded that the Defendant, as a passenger, has standing to contest the stop of the vehicle. An automobile stop results in a seizure of the car and passengers alike. *United States v. Hensley*, 469 U.S. 221, 226 (1985)(stopping a car and detaining its occupants constitutes a seizure under the Fourth Amendment); *Berkemer v. McCarty*, 468 U.S. 420, 436 (1984)(noting that "a traffic stop significantly curtails the 'freedom of action' of the driver and passengers, if any, of the detained vehicle").

Additionally, so long as a police officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop of an automobile is not unlawful and does not violate the Fourth Amendment, *Delaware v. Prouse*, 440 U.S. 648, 659 (1979); *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993) (en banc), *cert. denied*, 513 U.S. 828 (1994). A non-investigative traffic stop must be supported by probable cause, which is always present

5

when the stopping officer actually witnesses a traffic violation. *Whren v. United States*, (1996), 517 U.S. 806, 810; *Pennsylvania v. Mimms*, (1977), 434 U.S. 106, 109.

The issue thus becomes whether the operator of the motor vehicle proceeding southbound on Parkwood Avenue must indicate his intention to turn eastbound on Mock Road by giving an appropriate signal. If the answer is yes, then the officers who observed the vehicle fail to activate his turn signal had probable cause to stop the vehicle and issue a violation. If the answer is no, then no probable cause existed to stop the vehicle and the resulting seizure of evidence was unlawful.

**ANALYSIS**

**1.      Interpretation of Ordinance**

The answer to the issue in this matter is reached by analyzing the city ordinance in question. Columbus City Ordinance 2131.14 provides, in part:

> (a) No person shall turn a vehicle or move right or left upon a street or highway unless and until such person has exercised due care to ascertain that the movement can be made with reasonable safety nor without giving an appropriate signal in the manner hereinafter provided.
>
> Any stop or turn signal required by this section shall be given either by means of the hand and arm, or by signal lights that clearly indicate to both approaching and following traffic intention to turn or move right or left, except that any motor vehicle in use on a street or highway shall be equipped with, and the required signal shall be given by, signal lights when the distance from the center of the top of the steering post to the left outside limit of the body, cab, or load of such motor vehicle exceeds twenty-four (24) inches, or when the distance from the center of the top of the steering post to the rear limit of the body or load thereof exceeds fourteen (14) feet, whether a single vehicle or a combination of vehicles.
>
> The phrase "No person shall turn a vehicle..." is the operative portion of the ordinance.

In this Court's mind, the operator of the vehicle did "turn" the vehicle and because of that

6

maneuver, the operator was required to give an appropriate signal. The vehicle was proceeding southbound and turned and proceeded eastbound. Although the radius of the turn has been increased, the movement involved a 90° directional difference from southbound to eastbound. The change in direction caused the vehicle to travel from one roadway onto another distinct roadway. A strict interpretation of the ordinance results in only one possible answer: the operator was required to indicate his intention to turn by activating his turn signal or by indicating the turn by hand and arm movement.

This conclusion is buttressed by the second paragraph quoted above that mandates, when a turn signal is required, to "clearly indicate to both approaching and following traffic intention to turn...." It is important for traffic traveling northbound on Parkwood Avenue and stopped a the stop sign to receive a signal from southbound traffic of the operator's intention to turn eastbound onto Mock Road. Without such a signal, the northbound traffic could easily conclude that the southbound traffic was intending to continue southbound past Mock Road. Such a conclusion could be disastrous if, instead, the northbound traffic intended to proceed eastbound onto Mock Road and did not signal such a turn. The northbound traffic would, without warning then, pull into the path of the southbound - eastbound vehicle. If this Court were to interpret the ordinance in a manner not requiring a turn signal, which interpretation is contrary to the plain reading of that law, the Court would be inviting unsafe and unreasonable travel on that or similar portions of roadway. No one can rationally argue that such an interpretation was meant by the drafters of the ordinance.

      **2.**      **Good Faith Argument**

The Government further maintains that even if the operator were not required by the ordinance to indicate his intention to make the turn, the officers' good faith belief prevents this Court from granting the Defendant's requested relief.  Although it would be easy to "duck" the issue by finding that the Court has already decided the matter in the Government's favor on other grounds, this Court believes that it is important to indicate its findings for future reference.

In *United States v. Chanthasouxat*, 342 F.3d 1271 (11th Cir. 2003), the Circuit Court analyzed the law involving an officer's good faith but mistaken belief and found that a traffic stop based on an officer's incorrect but reasonable assessment of facts does not violate the Fourth Amendment.  When an officer makes a traffic stop based on a mistake of fact, the only question is whether the mistake was reasonable.

The result is different if the officer's mistake was one of law rather than a mistake of fact. There is no good faith exception to the exclusionary rule for police who do not act in accordance with governing law.  *United States v. Lopez-Soto*, 205 F.3d 1101 (9th Cir. 2000); *United States v. Lopez-Valdez*, 178 F.3d 282 (5th Cir. 1999); *United States v. Chanthasouxat, supra.*

In the case at bar, the decision to stop the vehicle was based upon the officer's interpretation of the ordinance in question.  There was no factual mistake.  Both officers observed the vehicle southbound and fail to indicate an eastbound turn.  The question is whether the officer's interpretation of the law was correct.  This Court has decided that the officer's interpretation was correct.  Had this Court found that the ordinance in question did not require a turn signal, the mistake of law would have prevented the application of the good faith exception to the exclusionary rule and the evidence would have been suppressed.

8

**CONCLUSION**

The Court concludes that the officers had probable cause to stop the vehicle as a result of the failure to indicate the turn in advance.  Accordingly, the motion of the Defendant (Doc. #13) is not well taken and is therefore **DENIED**.  The evidence obtained from the traffic stop will not be suppressed.

**IT IS SO ORDERED.**


        /s/   Gregory L. Frost
       GREGORY L. FROST
       UNITED STATES DISTRICT JUDGE